UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Armani Cummings,
     Petitioner

v.

                                    Case No. 22-cv-468-SM-AJ
                                    Opinion No. 2024 DNH 023

Warden, Federal Correctional
Institution, Berlin,
     Defendant


**O R D E R**


Armani Cummings, a self-represented federal prisoner, filed a petition for a writ of habeas corpus (document no. 1) while incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"). See generally 28 U.S.C. § 2241. He seeks to expunge a disciplinary violation from his prison record and restore twenty-seven days of Good Conduct Time Credits ("GCT") that were taken away as a sanction.

Before the Court is Armani's petition and the respondent warden's dispositive motion (document no. 8), styled as a Rule 12(b)(6) motion to dismiss. On January 18, 2024, the court converted that motion into one for summary judgment and afforded

the parties the opportunity to expand the record.  See Fed. R.
Civ. P. 12(d).  Cummings objects to that motion.

On February 14 and 16, 2024, Magistrate Judge Johnstone
held oral argument on the claims in the petition and the
government's motion for summary judgment.  The Court has
reviewed the record of that proceeding.  The matter is fully
briefed and suitable for resolution without an evidentiary
hearing, as the pertinent facts are not in dispute.  For the
reasons that follow, the court denies Cummings' petition and
grants the government's converted motion for summary judgment.

### Standard of Review

Habeas corpus relief pursuant to 28 U.S.C. § 2241 is
appropriate if a person is "in custody in violation of the
Constitution or laws or treaties of the United States."  28
U.S.C. § 2241(c)(3).  A petition seeking such relief may be
resolved on the merits without a hearing when, as here, the
material facts are not in dispute.  See 28 U.S.C. § 2243; see
also Rule 8(a) of the Rules Governing § 2254 Cases, Adv. Comm.
Notes to 1976 Adoption.  Petitioner bears the burden to prove
that his continuing detention violates his federal rights.
See Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  And, in light of the petitioner's pro se status, the court has construed his pleadings liberally.  See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008).

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit." Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).  Where a genuine dispute of material facts exists, such a dispute must be resolved by a trier of fact, not by the court on summary judgment.  See, e.g. Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002).

**Background**

On March 6, 2022, FCI Berlin Food Service staff found several Informal Resolution Remedy Forms (known as "BP-8 Forms") in the dining area and reported the discovery to Corrections Officer Scott Tawes.  The BP-8 forms are documents inmates use to initiate the grievance process and by which they informally communicate matters of concern about the conditions of their confinement.  See generally 28 C.F.R. § 542.13(a).  See also United States v. Austin, No. 18-cr-102-SE, 2023 DNH 140, 2023 WL 7337044, at *3 n.3 (D.N.H. Nov. 7, 2023).

Following his investigation into the matter, Officer Tawes prepared an Incident Report, which provided as follows:

> On March 06, 2022 . . . [CO Tawes] was notified by Food Service staff they had located several BP-8 informal resolution remedy papers.  Upon review of the BP-8s [CO Tawes] observed there were nine written with the exact same verbiage.  Based on the review of video [CO Tawes] was able to identify Inmate Cummings, Armani, #91815-054 as the inmate who was in possession of the BP-8's.
>
> The BP-8's were in regards to FCI Berlin blocking TV-MA shows on the Starz network.  Based on the mass produced BP-8's, inmate Cummings was attempting to encourage other inmates to participate in a group demonstration in order to get Starz TV-MA shows un-blocked.

Doc. No. 1-1, at 1 (emphasis supplied).  Officer Tawes concluded that Cummings obtained nine copies of the BP-8 form and

completed each one with identical language complaining about the prison's television policy.  The sections of those BP-8 forms in which a prisoner fills in his name, Federal Bureau of Prisons ("BOP") identification number, and signature, were all blank (although those forms are not before the court, all agree on this point).

The specific conduct in which Cummings engaged is not explicitly banned by BOP regulations.  So, Officer Tawes charged Cummings with violating BOP Prohibited Act Code ("Code") 299. Code 299 encompasses any conduct that, "disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons [and that is] most like another High severity prohibited act."  Prohibited Acts and Available Sanctions, High Severity Level Prohibited Acts, 28 C.F.R. § 541.3, table 1. That regulation goes on to provide that "This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as 'most like' one of the listed High severity prohibited acts."  Id.  Here, Officer Tawes concluded that Cummings' conduct was "most like" the prohibited

act of "engaging in or encouraging a group demonstration" - a
Code 212 violation.  See Id.[1]

Additionally, based upon Cummings' unauthorized possession
of nine BP-8 Forms, Officer Tawes also charged him with a
violation of Code 305: "possession of anything not authorized
for retention or receipt by the inmate, and not issued to him
through regular channels."  Prohibited Acts & Available
Sanctions, Moderate Severity Level Prohibited Acts, 28 C.F.R. §
541.3, table 1.  Cummings received notice of the Incident Report
on March 6, 2022, and a hearing before a Disciplinary Hearing
Officer ("DHO") was conducted on March 18, 2022.

At the hearing, the following evidence was presented to the
DHO: nine identical, partially-completed BP-8 forms found in the
food service area; the video footage showing Cummings in
possession of those forms; Officer Tawes's Incident Report; and
Cummings's statement at the hearing that, "I had the BP-8.  I
was only giving it to one person.  I wasn't trying to cause a
disruption."  March 18, 2022, DHO Report (document no. 1-2, at
1).  Based upon that evidence, the DHO concluded that Cummings

---

[1]    Prohibited acts are categorized according to their
severity.  Code Level 100 prohibited acts are deemed the
"Greatest Severity," (e.g., killing, setting a fire, or escape),
Code Level 200's are "High Severity," Code level 300's are
"Moderate Severity," and Code Level 400's are "Low Severity"
prohibited acts.  See generally 28 C.F.R. § 541.3.

committed the Code 299/212 offense.  The DHO then replaced the
Code 305 charge with a Code 314 charge (which prohibits the
unauthorized reproduction of any official paper) "to better
represent the incident," and found the petitioner had violated
Code 314, as well.  Id. at 2.  Specifically, the DHO concluded
that:

> The DHO informed you that program statement 1330.18
> Administrative Remedy Program specifically reads: "The
> purpose of the Administrative Remedy Program is to
> allow an inmate to seek formal review of an issue
> relating to any aspect of his/her own confinement.  An
> inmate may not submit a Request or Appeal on behalf of
> another inmate."  By making unauthorized photocopies,
> Inmate Cummings is not only violating the
> Administrative Remedy Program, but is attempting to
> distribute the unauthorized copies to at least nine
> other inmates in order to promote others to
> participate and gather together to support a cause,
> specifically getting Starz channel movies that are
> "TV-MA" rated to be unblocked.

DHO Report, Doc. No. 1-2, at 3 (emphasis supplied).


For the "High Severity" Code 299/212 offense, the DHO
sanctioned Cummings with, among other things, revocation of
twenty-seven days of good conduct time.  For the "Moderate
Severity" Code 314 violation, the DHO imposed a two-month loss
of commissary privileges.  Id.

Cummings appealed the DHO's decision using the BOP's administrative process. His administrative appeals were denied. Here, Cummings argues, as he did in his administrative appeals, that there was insufficient evidence to support the guilty finding on the Code 299/212 offense, upon which his loss of GCT was based. See Doc. No. 1, at 2. He also claims that there was insufficient evidence to support a finding that he was guilty of a Code 305 violation (possession of contraband). But, as noted above, the DHO did not find Cummings guilty of a Code 305 violation. Instead, he was found guilty of a Code 314 violation (unauthorized reproduction of an official document). Consequently, Cummings' arguments on that latter point are off the mark.

More importantly, however, the DHO imposed a loss of Good Conduct Time Credit exclusively for the "High Severity" Code 299/212 violation. "While the Due Process Clause protects against the revocation of good-time, it does not provide the same level of protection against the imposition of other forms of discipline." Reynolds v. Williamson, 197 F. App'x 196, 198 (3d Cir. 2006). Disciplinary sanctions that have no impact on the fact or length of confinement cannot be challenged under § 2241. Id. (six month loss of commissary privileges did not invoke due process protections). Cummings' arguments regarding the lack of

evidence to support a Code 305 violation, as well as his
arguments regarding the DHO's decision to convert the Code 305
violation into a Code 314 offense, do not provide any grounds for
relief under 28 U.S.C. § 2241.  Accordingly, the court will focus
solely on Cummings' claims arising out of his conviction of the
Code 299/212 offense.

## Discussion

### I.  Jurisdiction

As a preliminary matter, there is arguably a question about
whether this court retains jurisdiction over Cummings' 2241
petition because, after he filed it, the BOP transferred Cummings
to a federal prison facility in Kentucky.  And, under § 2241(a),
the "court issuing the writ [must] have jurisdiction over the
custodian."  Rumsfeld v. Padilla, 542 U.S. 426, 444 (2004)
(citation and internal punctuation omitted).  Consequently, the
BOP's recent transfer of Cummings to a different federal prison
outside of New Hampshire raises the question of whether this
court has been divested of jurisdiction to grant any relief,
since the petitioner's immediate custodian is now an out-of-
district warden.

The Court of Appeals for the First Circuit has yet to
address that specific issue.  But, several judges in the

Districts of Massachusetts and New Hampshire have considered the
matter in the context of motions to dismiss for lack of
jurisdiction filed by a respondent Warden, after the BOP
transferred a petitioner from federal facilities in those
districts to federal prisons elsewhere.  See, e.g., Yancey v.
Warden, FMC Devens, No. 22-cv-11790-DLC, 2023 WL 4409852 (D.
Mass. July 7, 2023); accord Jones v. FCI Berlin, No. 21-cv-767-
SE, 2023 DNH 019, 2023 WL 2186459 (D.N.H. Feb. 22, 2023).  The
issue has also been addressed and resolved by several courts of
appeals in other circuits.  See, e.g., In re Hall, 988 F.3d 376,
378-79 (7th Cir. 2021); Lennear v. Wilson, 937 F.3d 257, 263 n.1
(4th Cir. 2019); Johnson v. Gill, 883 F.3d 756, 761 (9th Cir.
2018); Pinson v. Berkebile, 604 F. App'x 649, 652 (10th Cir.
2015); see also Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th
434, 447 (3d Cir. 2021) (jurisdiction over § 2241 petition
remained in district court when detainee filed post-judgment
motion to reopen after he had been transferred to out-of-district
detention facility).  See generally Rumsfeld v. Padilla, 542 U.S.
426 (2004); Ex parte Endo, 323 U.S. 283 (1944).  All agree that a
district court need not dismiss a section 2241 habeas petition
upon the petitioner's transfer, so long as jurisdiction properly
attached in the first instance and provided the BOP, operating
through the respondent Warden in his official capacity, remains
present in the district.

There is, then, substantial persuasive authority supporting
the conclusion that the court retains jurisdiction over Cummings'
petition, despite his recent transfer to another district.  This
court (Elliot, J.) recently reached the same conclusion.  See Fox
v. Warden, FCI Berlin, No. 21-cv-158-SE, 2022 DNH 051, 2022 WL
1085311 (D.N.H. Apr. 11, 2022).  The reasoning in Fox is thorough
and persuasive.  It need not be recounted.  It is sufficient to
note that this court agrees.  As in Fox, the court properly
acquired jurisdiction over the section 2241 petition when it was
filed in this district and named as respondent the petitioner's
immediate custodian at the time.  Despite BOP's subsequent
transfer of Cummings to another district, "jurisdiction remains
with this court and the court may direct the writ to any
respondent within its jurisdiction who has legal authority to
comply with any order that may issue."  Fox, 2022 WL 1085311 at
*3.


II.  Cummings' Disciplinary Proceedings

Prisoners have a protected liberty interest in their Good
Conduct Time Credits, which affords them certain due process
protection in disciplinary proceedings before those credits can
be reduced.  See Sup't, Mass. Corr. Inst. v. Hill, 472 U.S. 445,
453-54 (1985); Wolff v. McDonnell, 418 U.S. 539, 557 (1974).

The minimum procedural due process requirements for prison disciplinary hearings affecting GCT are: written notice of the charge; the ability to call witnesses and present documentary evidence (when doing so is consistent with institutional safety and correctional concerns); a hearing before an impartial decisionmaker; and a written statement of the evidence relied on and reasons for the decision.  See Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005); Wolff, 418 U.S. at 564-66.

In the context of a 2241 petition challenging a prison's disciplinary decision, this court's review is highly deferential.  Such a decision must be sustained if the Disciplinary Hearing Officer's finding is supported by "some evidence in the record."  Hill, 472 U.S. at 454.

> This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56 (citations and internal punctuation omitted). Factual support for the disciplinary decision may be "meager" and there may be a dearth of "direct evidence" supporting it. Id. at 457.  Nevertheless, the DHO's decision must be sustained

12

so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Id. Plainly, then, Cummings' efforts to overturn the finding that he committed a Code 299/212 violation face a decidedly uphill battle.

Cummings does not claim that his procedural due process rights were violated, but instead asserts that the evidence presented at the DHO hearing was insufficient to satisfy the "some evidence" standard. Specifically, he claims that "there is no evidence in the record that he disrupted or interfered with the security or orderly running of the institution." Petition at 1 (paraphrasing the language describing a Code 299 violation). Indeed, says Cummings, inmates are explicitly permitted to assist other inmates in preparing a request or an appeal. See 28 C.F.R. § 542.16. So, in Cummings' view, not only was his conduct not prohibited, it was actually authorized in so far as he was merely "assisting" other inmates in preparing BP-8 Forms complaining about the prison's television policy - all in a non-disruptive manner. The court disagrees.

There is, however, a meaningful difference between the language of the regulation upon which Cummings relies and his interpretation of it. That regulation states, in pertinent part,

that "an inmate may obtain assistance <u>from</u> another inmate . . .

in preparing a Request or an Appeal."  28 U.S.C. § 542.16(a).

That language contemplates situations in which an inmate wishes

to file a specific request (or appeal) but does not feel fully

capable of doing so without help.  In those circumstances, the

inmate may seek out and obtain assistance from another inmate.

Cummings, however, does not claim to have been responding to any

particular inmate's request for assistance, nor does he claim to

have offered assistance to an inmate seemingly in need.  Instead,

he improperly obtained and then prepared - in bulk - inmate

request forms seeking to advance an issue of interest to him by

encouraging other inmates to join in parallel, but still

concerted, activity.  That conduct crossed the line from merely

"assisting another inmate" in filing a request or appeal and

ventured into the realm of attempting to organize a group or

collective action against a particular prison policy.


    Cummings' claim that his conduct was not actually

disruptive (and, therefore, not violative of Code 299) also

misses the point.  The pertinent regulations make clear that

actual disruption or interference with the orderly

administration of the facility need not have occurred before a

violation can be found.  <u>See</u> 28 C.F.R. § 541.3(a) ("Aiding,

attempting, abetting, or making plans to commit any of the

prohibited acts is treated the same as committing the act itself."). So, it is sufficient to sustain Cummings' disciplinary conviction if he attempted or made plans to engage in conduct that would result in a Code 299/212 violation - that is, if he attempted to, or planned to engage in conduct that would disrupt the security or orderly running of the prison by organizing or encouraging something "like" a group demonstration. That Cummings' conduct may not have gone so far as to have actually disrupted or interfered with prison operations is immaterial. So, too, is his claim that he did not "intend" to cause a disruption. The relevant inquiry is whether there is some evidence: (a) that Cummings prepared the multiple identical BP-8 Forms as part of a plan to have other inmates submit them to the prison's grievance system as part of a joint effort to challenge a prison policy; and (b) that, if successful, Cummings' plan could have disrupted or interfered with the security or orderly running of the prison. There is. See generally Bliss v. Sauers, No. 3:CV-13-1958, 2013 WL 5208821, at *3 (M.D. Pa. Sept. 13, 2013) ("Any negatively intended group action in a prison setting promotes potential unrest and violence."); Brooks v. Pearson, 428 F. App'x 384, 385 (5th Cir. 2011) (upholding DHO's conclusion that "when inmates attempt to organize or represent other inmates, things have a

tendency to escalate and potentially turn into riots or work stoppages.").

Cummings' charged conduct was not unlike that in <u>Lora v. Outlaw</u>, No. 04-2923-JDB/TMP, 2008 WL 2097374, at *2 (W.D. Tenn. May 16, 2008).  In <u>Lora</u>, the inmate was concerned about rumored changes to the prison's housing policy and the possibility that inmates might be triple-bunked.  The Associate Warden reportedly told inmates they could challenge such a policy change through the administrative remedy process.  Lora, like Cummings, then took it a step too far.  He made multiple copies of a document complaining about the housing policy and made those documents available to other inmates to submit to prison staff as an attachment to their individual BP-8 Forms.  Lora, like Cummings, was charged with, and convicted of, a Code 299/212 violation for having "made multiple copies of BP-8's concerning triple bunking at FCI Gilmer, and told as many inmates as would take them, to submit them to their unit team."  <u>Id</u>, at *2.  In support of that finding, the DHO concluded that:

> These actions were disrupting the security and orderly running of the institution due to inmates becoming enticed and agitated over the possibility of being triple bunked.

* * *

> Therefore, the DHO finds that you violated Code
> 299(212), Conduct which Disrupts the Security and
> Orderly Running of the Institution most like
> Encouraging a Group Demonstration.

Id. In finding that Lora's conviction of a Code 299/212

violation was adequately supported, the district court concluded

that, "[w]hile any individual inmate was permitted to use the

administrative remedy process or the courts to challenge the

policy, the Associate Warden's statement [encouraging inmates to

use the administrative remedy program] did not grant Lora carte

blanche to draft, photocopy, and distribute multiple BP8s in an

attempt to orchestrate a demonstration or class action by fellow

inmates."). Id. at *3.


Reasonable minds might well disagree about whether Cummings'

conduct, such as it was, should have resulted in the loss of Good

Conduct Time Credits. To those looking from the outside in,

Cummings misconduct was, perhaps, comparably minor and his

subjective intent may not have been aimed at organizing some form

of group resistance or causing disruption. But, to those charged

with maintaining the orderly administration of a penal facility,

that conduct was not so minor. The evidence of record fully

supports the conclusion that Cummings impermissibly made (or

obtained) nine copies of the BP-8 Form and completed each with

identical language describing a uniform (collective) complaint

17

about a specific prison policy.  It is also fair and reasonable
to infer that Cummings planned to distribute those partially-
completed forms to other inmates in an effort to garner group
support for his efforts to change the prison's television policy.
A plausible and sustainable interpretation of that evidence is
that Cummings was attempting to initiate group or class action
aimed at changing the prison's television policy - conduct
plainly "like" engaging in or encouraging a group demonstration
against that policy.  In the prison setting, conduct of that sort
certainly has the potential to be disruptive.  The DHO's
determination that Cummings' conduct violated Code 299/212 is
amply supported in the record.

### Conclusion

There is a meaningful difference between simply assisting
another inmate in preparing his informal grievance slip and
actively trying to recruit a group of inmates to form together to
collectively file identical grievances on an issue of particular
concern to the organizing inmate.  Cummings engaged in the latter
and such conduct is prohibited.

For the foregoing reasons, as well as those set forth in the
government's legal memorandum (document no. 8-1), Cummings'
petition for habeas corpus relief (**document no. 1**) is denied and

the government's motion for summary judgment (**document no. 8**) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

                                     _____
                                     Steven J. McAuliffe
                                     United States District Judge

March 25, 2024

cc:  Armani Cummings, pro se
     Heather Cherniske, Esq.